# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

LATOYA LANCASTER,
VICTOR L. BROWN,
MARTIN JENNINGS and
SHAMEKICA PROCTOR, *Individually and on Behalf of Others Similarly Situated*,

    Plaintiffs,

v.

FQSR, *d/b/a KBP Foods*,

    Defendant.

Civil Action No. TDC-19-2632

## MEMORANDUM OPINION

Plaintiffs Latoya Lancaster, Victor Brown, Martin Jennings, and Shamekica Proctor, acting individually and on behalf of all similarly situated individuals, have filed this action against their current or former employer, FQSR LLC, d/b/a KBP Foods ("FQSR"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (2018), the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-431 (LexisNexis 2016), and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509, as well as a common law claim of unjust enrichment, based on the failure to pay them wages for all of their time worked, including overtime. Plaintiffs assert the FLSA claim as a collective action under 29 U.S.C. § 216(b) and the state law claims as a class action under Federal Rule of Civil Procedure 23. Pending before the Court is Plaintiffs Pre-Discovery Motion for Conditional Certification of the FLSA collective action. Having reviewed the submitted materials,

the Court finds no hearing necessary. D. Md. Local R. 105.6. For the reasons set forth below, Plaintiffs' Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

FQSR operates approximately 700 Kentucky Fried Chicken ("KFC") and Taco Bell franchise restaurants across the United States. Currently, FQSR operates 20 KFC restaurants in Maryland, seven of which were acquired by FQSR in July 2019. FQSR's Maryland restaurants are divided into three regions. Thomas Chalkley, who has been employed by FQSR since June 2016, is the Area Coach responsible for one of those three regions encompassing the restaurants in Prince Frederick, Kettering, Upper Marlboro, La Plata, Waldorf, and Bryans Road, Maryland.

FQSR employed each of Plaintiffs at the KFC in La Plata, with two having also worked at various times at the KFC in Upper Marlboro, on a non-exempt hourly basis for various time periods beginning from 2008 until the present. Plaintiffs claim that throughout their employment with FQSR, they regularly worked in excess of 40 hours during a workweek but ultimately were not paid for all of that time worked because FQSR managers, through various methods, eliminated or reduced the number of work hours credited for pay. These methods included supervisors: (1) directly adjusting downward the number of hours in existing time records; (2) inaccurately entering an employee's time when the restaurant's timekeeping system requiring the employee's fingerprint to clock in and out was not working; (3) directly clocking out employees who were still working, without their knowledge; and (4) directing employees to clock out even while they continued working and falsely promising to add the time to another workday. Plaintiffs allege that FQSR incentivized its managers to engage in these practices by offering bonuses if they kept "Hourly Labor" metrics low. Compl. ¶ 17, ECF No. 1.

Lancaster filed this action on behalf of herself and those similarly situated alleging that based on these practices, FQSR unlawfully failed to pay non-exempt employees for all hours worked and failed to provide overtime pay for certain overtime hours, in violation of the FLSA, MWHL, and MWPCL, and resulting in unjust enrichment. Lancaster has brought her FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) and her state law claims as a class action pursuant to Federal Rule of Civil Procedure 23. Pursuant to 29 U.S.C. § 216(b), Brown, Jennings, and Proctor have opted into the FLSA collective action as additional plaintiffs.

## DISCUSSION

In their Pre-Discovery Motion for Conditional Certification, Plaintiffs requested that the Court conditionally certify an FLSA collective action on behalf of "All individuals who have worked at one of [FQSR's] KFC or Taco Bell restaurant franchises located in Maryland within the last three years and were classified as nonexempt from the overtime pay mandates." Mot. Conditional Certification ("Mot.") at 1, ECF No. 37-1. Plaintiffs have since amended their proposed collective action definition to consist of "All individuals who have worked at one of [FQSR's] KFC or Taco Bell restaurant franchises located in Maryland within the last three years and were classified as nonexempt from the overtime pay mandates except those who only worked as either 'Co-Managers' and 'Shift Managers' during the entire period." Reply at 3, ECF No. 42. Plaintiffs contend that this putative class of employees at FQSR restaurants across Maryland consists of individuals similarly situated to Plaintiffs in that they: (1) are paid on an hourly basis; (2) have regularly worked more than 40 hours in a single workweek; and (3) have not been compensated for all of their work activities.

Although FQSR argued, in opposing the Motion, that the Plaintiffs' original putative class definition was too broad because it includes certain managers exempt from the overtime

3

requirements but who were responsible for the allegedly unlawful practices, where Plaintiffs have modified their class definition to exclude such managers, and FQSR has not seriously contested that such exclusion would cure the alleged deficiency in the collective action definition, the Court need not further address that particular argument. *See, e.g., Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *7 (S.D. Ohio Sept. 25, 2019) (considering at the FLSA conditional class certification stage the plaintiff's amended proposed class definition as stated in the reply brief, which narrowed the scope from all of defendant's hourly call-center employees to all non-exempt employees who had worked at or for defendant's call centers and provided direct customer support and assistance through phone or email systems); *Sawyer v. Health Care Sols. at Home, Inc.*, No. 5:16-CV-5674, 2018 WL 1959632, at *3 (E.D. Pa. Apr. 25, 2018) (considering the plaintiff's narrowed class definition as stated in his reply brief).

**I.      Legal Standard**

The FLSA generally requires that employees who work more than 40 hours in a week receive overtime pay at the rate of one and one-half times their regular pay rate. *See* 29 U.S.C. § 207(a). If an employer violates these rules, employees may sue their employers as individuals or, if they choose, in a collective action on behalf of themselves and "similarly situated" employees. 29 U.S.C. § 216(b); *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 758 (4th Cir. 2011). If employees choose to pursue a collective action, they may seek court-approved notice to inform similarly situated employees that they may join the litigation. *See Hoffman–La Roche v. Sperling*, 493 U.S. 165, 169 (1989) (discussing the parallel collective action provision under the Age Discrimination in Employment Act).

The collective action provision serves several purposes. First, collective actions allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources."

4

*Id.* at 170. Second, collective actions allow the courts efficiently to resolve common issues in one proceeding. *See id.* Third, FLSA collective actions promote enforcement of the law by empowering employees to "join in their litigation so that no one of them need stand alone in doing something likely to incur the displeasure of an employer." *See Pentland v. Dravo Corp.*, 152 F.2d 851, 853 (3d Cir. 1945).

Although the United States Court of Appeals for the Fourth Circuit has not provided specific guidance on how to address a motion for conditional certification of an FLSA collective action, decisions from other Courts of Appeals have identified, and judges of the United States District Court for the District of Maryland generally apply, a two-step process to test the sufficiency of the purported class: (1) a pre-discovery determination that the purported class is similarly situated enough to disseminate notice (the "notice stage"); and (2) a post-discovery determination, typically in response to a motion for decertification, that the purported class is indeed similarly situated. *See, e.g., Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001); *Mooney v. Aramco*, 54 F.3d 1207, 1213–14 (5th Cir. 1995); *Randolph v. Powercomm Constr., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). At the notice stage, courts applying this process make a threshold determination whether the class is similarly situated based on "substantial allegations" in the pleadings and any submitted affidavits or declarations. *See Thiessen*, 267 F.3d at 1102. Then, once discovery is largely completed, such courts perform a more stringent inquiry into whether the class is indeed similarly situated. *Mooney*, 54 F.3d at 1214.

Because the record is sparse at the notice stage, courts often apply "a fairly lenient standard." *Id.*; *Hipp*, 252 F.3d at 1218 (noting that courts use a "fairly lenient standard" that

5

"typically results in 'conditional certification'" at the notice stage); *Randolph,* 7 F. Supp. 3d at 575–76. Thus, courts require no more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen,* 267 F.3d at 1102 (citations omitted); *Randolph,* 7 F. Supp. 3d at 575–76. Although vague allegations with meager factual support are generally insufficient to certify a class, proponents of conditional class certification need not conclusively demonstrate that a class of similarly situated plaintiffs exists. *See Randolph,* 7 F. Supp. 3d at 576; *Syrja,* 756 F. Supp. 2d at 686 (requiring "relatively modest" evidence that the putative class members are similarly situated).

This Court will apply the two-step process because a modest inquiry into the propriety of conditional class certification before issuing court-approved notice is consistent with the purposes of the FLSA collective action provision. Certainly, some threshold inquiry before issuing notice to potential class members is appropriate to ensure that notice is not subject to misuse and is "timely, accurate, and informative." *See Hoffman–La Roche,* 493 U.S. at 171–72. But it is equally important that the inquiry occur under a lenient standard to be consistent with the FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge an employer. *See id.* at 170; *Pentland,* 152 F.2d at 853.

Finally, because all employees who join an FLSA collective action, unlike a class action under Federal Rule of Civil Procedure 23, must affirmatively opt into the litigation as plaintiffs, *see Simmons,* 634 F.2d at 758, it would be unfair to impose an initial barrier significantly more stringent than the one imposed on ordinary plaintiffs seeking to join a litigation under Rule 20. For these reasons, the Court applies the two-step process and the lenient standard at the notice stage.

## II. Conditional Certification

The Complaint alleges that as a result of FQSR's common business practices of eliminating hours actually worked from those compensated, Plaintiffs and similarly situated, non-exempt hourly employees were not properly compensated, including with overtime pay. Plaintiffs have submitted four declarations providing factual support for their allegations. Although FQSR argues that some of the declarations present hearsay evidence, at this stage of the proceedings, the Court may consider affidavits containing reports of statements by supervisors, which are not necessarily hearsay, Fed. R. Evid. 801(d)(2)(D), as well as hearsay statements, such as those made by co-workers. *See Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. CCB-07-455, 2008 WL 554114, at *3 (D. Md. Feb. 26, 2008) (granting conditional certification in part based on accusations made in sworn declarations that the defendant's supervisors told employees about a policy not to pay overtime wages); *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006) (holding that the plaintiffs adequately demonstrated that other unidentified co-workers were similarly situated in part based on one plaintiff's declaration that a group of workers told him that they had worked for multiple weeks without pay); *Robinson v. Empire Equity Grp., Inc.*, No. WDQ-09-1603, 2009 WL 4018560, at *3 (D. Md. Nov. 18, 2009) ("Judges deciding motions for conditional certification in this district have considered hearsay in supporting affidavits" which "is appropriate given the modest factual support required at this stage.").

Upon consideration of the available facts, the Court finds that Plaintiffs have offered sufficient evidence to satisfy the lenient standard at this stage as to a subset of FQSR restaurants in Maryland. All four Plaintiffs assert in their declarations that they personally worked at the KFC in La Plata and two also worked at the KFC in Upper Marlboro. While at those restaurants, they all were required to perform work that was often not reflected in their paychecks. They reported

that the same or similar tactics were employed by supervisors for reducing their hours, including directly reducing the hours in existing time records, entering inaccurately low numbers of hours when the timekeeping system accessible only with an employee's fingerprint was down; directly clocking employees out even while they continued working; and directing employees to clock out and continue working while falsely promising to add the extra work time to another workday. Beyond their own experiences, Plaintiffs have stated that they personally observed and heard from co-workers of similar off-the-clock manipulation of time entries against other employees. Plaintiffs have provided a consistent explanation for these deficiencies, based on similar statements by their managers: that supervisors were motivated to alter the time records because they received monthly bonuses if they limited the number of hours worked by crew members to meet "labor budgets" from the company. *E.g.*, Lancaster Decl. ¶ 4, Mot. Ex. 1, ECF No. 37-2. Where Plaintiffs have provided declarations establishing that similar motivations and tactics were employed by multiple managers at the La Plata and Upper Marlboro restaurants, against multiple employees with the same result of a failure to pay for all hours worked, the Court finds that Plaintiffs have sufficiently alleged that the employees at those two KFC locations were "together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Thus, at a minimum, employees at these two locations are similarly situated for purposes of collective action certification. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 569 (D. Md. 2012) (certifying an FLSA collective action for suppression of overtime pay across multiple warehouses based on evidence that multiple warehouse managers instructed workers, contrary to company policy, not to record all of their time, such that the evidence was "sufficient at this early stage to demonstrate that the instructions Plaintiffs received were not attributable solely to a rogue supervisor") (citations omitted).

8

Plaintiffs further argue that the collective action should be certified across all FQSR franchises in Maryland because they are similarly situated to employees at those locations, even if none of Plaintiffs worked at locations other than La Plata and Upper Marlboro. Plaintiffs argue that such a broad certification is appropriate where there is a "common policy or plan," *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011), which can oftentimes be inferred if there is "common ownership and control of all . . . entities," *Karic v. Major Auto. Companies, Inc.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011). The Court agrees that Plaintiffs have alleged sufficient facts at this stage to support the conclusion that workers at KFC locations in the same region are similarly situated and thus may be part of the collective action to be conditionally certified.

Beyond the evidence relating to La Plata and Upper Marlboro, Plaintiffs offer, in Brown's declaration, the fact that a cook at the Bryans Road KFC told him that his "hours worked never added up correctly" when he worked there for "Miss Thomas," one of the managers who allegedly engaged in the tactics to reduce employees' hours worked at La Plata or Upper Marlboro. Brown Decl. ¶ 8, Mot. Ex. 3, ECF No. 37-3. Brown also stated that he heard a specific conversation in which Area Manager "Tom" told his manager that she needed "to reduce the hours that crew members worked at the restaurant to meet her labor budget." *Id.* ¶ 4. FQSR has acknowledged that Tom Chalkley is the Area Coach for six Maryland locations in one of FQSR's three Maryland regions, which include the KFC's in La Plata, Upper Marlboro, and Bryans Road, as well as in Prince Frederick, Kettering, and Waldorf ("the Chalkley Area"). Based on Chalkley's common supervisory role across Plaintiffs' locations of employment as well as Bryans Road, and the reported statement that ties Chalkley to the motivation for the alleged compensation practices at issue here, Plaintiffs have met the "relatively modest" evidentiary requirement to show that

9

employees across all of the FQSR restaurants in the Chalkley Area are similarly situated as to such practices and may therefore be included in the collective action to be conditionally certified. *Syrja*, 756 F. Supp. 2d at 686; *see also Butler*, 876 F. Supp. 2d at 570 n.10 (noting that the analysis for conditional certification is not quantitative and thus a single affidavit may, in some circumstances, be enough to show a common policy to violate the FLSA). This conclusion is bolstered by Lancaster's statement that she had conversations with two substitute managers, "Mr. Ola and Ms. Dale," who were "from other restaurants in Maryland," in which they warned that workers "at other Maryland restaurants were also being short changed by their managers to keep labor budgets low so they could get bonuses." Lancaster Decl. ¶ 8.

FQSR's arguments to limit the collective action to only the La Plata and Upper Marlboro locations are unpersuasive. First, FQSR argues that it has always had mandatory policies that employees record and be paid for all time worked. However, "it is well-settled that the promulgation of written policies, per se, is insufficient to immunize an employer from conduct that otherwise contravenes the FLSA." *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 828 (D. Md. 2012). Second, FQSR argues that a determination whether members of the proposed class are similarly situated would require numerous highly individualized factual inquiries regarding time records, whether they were modified, and what role or awareness, if any, these employees' supervisors had of these practices. "The salient flaw in this argument is that it delves too deeply into the merits of the dispute; such a steep plunge is inappropriate for such an early stage of a FLSA collective action. The crux of the matter is whether Plaintiffs have made a modest factual showing that they were victims of a common policy or scheme that contravenes the FLSA." *Id.* at 826. "For the reasons articulated above, Plaintiffs have made this modest showing." *Id.*

10

Finally, FQSR argues that the certification should not extend to the seven restaurants FQSR acquired in July 2019. Where FQSR has not provided any information to demonstrate how many and which of these recently acquired locations are located in the Chalkley Area, it is unclear to what extent this argument is relevant to the Court's identified class. In any event, as to any such restaurants now under Chalkley's oversight, where the allegations in the submitted declarations extend to the present day, they would now be subject to the same policies and practices as the other FQSR restaurants in the same area. The Court will therefore conditionally certify a collective action across the six FQSR KFC locations within the Chalkley Area. *See, e.g., Mendoza v. Mo's Fisherman Exch., Inc.*, No. ELH-15-1427, 2016 WL 3440007, at *14 (D. Md. June 22, 2016) (certifying a class broader than just the locations where the plaintiffs personally worked where the plaintiffs presented information about conversations with employees at other locations about experiencing similar wage improprieties, and there was evidence of a common owner involved in the operation of all of the restaurants); *Andrade v. Aerotek, Inc.*, No. CCB-08-2668, 2009 WL 2757099, at *5 & n.13 (D. Md. Aug. 26, 2009) (granting conditional certification to employees at both the Charlotte office at which the plaintiffs offering evidence of improper overtime practices worked and at a second office managed by the same individual); *see also Contrera v. Langer*, 278 F. Supp. 3d 702, 718 (S.D.N.Y. 2017) (granting conditional certification to superintendents working in all apartment buildings managed from the same office, based on plaintiffs' conversations with employees from certain other buildings managed by that office that they likewise did not receive overtime pay).

The Court will not, however, conditionally certify a class encompassing all FQSR restaurants across the state of Maryland. For allegations of improper *de facto* pay policies that may violate the FLSA, some evidence that the improper practices extend across the proposed class

11

is necessary. *See, e.g., Andrade*, 2009 WL 2757099, at *5 (declining to extend the class to offices for which there was no evidence of employees instructed not to report overtime); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 520–21 (D. Md. 2000) (limiting conditional certification and notice to employees of the single company facility for which there had been a factual showing of uncompensated work known to supervisors). At this stage, Plaintiffs have not provided specific evidence that the allegedly unlawful pay practices extended beyond the Chalkley Area. Lancaster's statement that substitute managers acknowledged that such practices existed at "other Maryland restaurants" is too vague and non-specific to demonstrate that the practices occurred outside of the Chalkley Area. *See, e.g., Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 666–67 (S.D.N.Y. 2013) (finding a single statement that *de facto* unlawful timekeeping practices were a "company policy" to be insufficient to warrant statewide conditional certification but granting certification to employees at all Hess gas stations in two regional territories within New York).

In support of a statewide class, Plaintiffs primarily argue that because a different group of non-exempt restaurant employees of FQSR alleged similar FLSA violations in a 2018 case filed in the United States District Court for the Western District of Missouri, *Cano v. FQSR, LLC*, No. 4:18-cv-00640 (W.D. Mo. 2018), the Court should infer that there exist "common, corporate policies . . . across all FQSR's restaurants, including throughout Maryland." Reply at 9. Although courts may consider prior, similar cases against the same defendant in resolving the question of collective action certification, in several of the cases relied upon by Plaintiffs, the court considered a prior case involving the same or nearby work locations in support of certifying a class of employees at a single location only. *See Clinton v. Gov't Employees Ins. Co.*, No. 2:16CV430, 2017 WL 3025558, at *1, *4 (E.D. Va. July 14, 2017) (considering the fact that employees of a Virginia Beach, Virginia call center were part of a certified collective action across multiple

12

locations that was later decertified in granting certification of a subsequent, separate collective action focused on that Virginia Beach location only); *Alvirde v. Fresh Farms Int'l Mkt., Inc.*, No. 14 CV 715, 2014 WL 7265072, at *2 (N.D. Ill. Dec. 19, 2014) (certifying a collective action at a single grocery store based on nine declarations of employees at that store as well as consideration of the previous settlement of a similar lawsuit in the same district against the same defendant); *Pontones v. San Jose Rest. Inc.*, No. 5:18-CV-219-D, 2019 WL 5680347, at *2 (E.D.N.C. Oct. 31, 2019) (considering the previous certification and settlement of a collective action of employees working in a group of restaurants in granting collective action certification in a subsequent case relating to the same restaurants filed after an alleged breach of the settlement agreement). In other instances, the court considered specific evidence from other lawsuits against the same defendant, such as declarations or deposition testimony, that related to the specific geographic locations that formed the proposed class. *See Bobbitt v. Broadband Interactive, Inc.*, No. 8:11-CV-2855-T-24, 2012 WL 1898636, at *5 (M.D. Fla. May 23, 2012) (considering declarations filed in previously settled cases against the defendant by employees at locations across multiple Florida counties in granting certification of a new statewide FLSA collective action relating to Florida); *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07CV2579(HB), 2008 WL 3399067, at *2–3 (S.D.N.Y. Aug. 12, 2008) (finding that deposition testimony taken in a prior lawsuit against the same defendant was relevant in establishing a common policy in the present case). Here, Plaintiffs do not rely on specific affidavits or other evidence from *Cano*, and, unlike in the cited cases, they ask the Court to infer unlawful pay practices here in Maryland by extrapolating from a case involving practices in a different part of the United States. The Court concludes that the second-hand statements that the unlawful practices occurred in "other Maryland restaurants" and the allegations of similar practices in Missouri are, without more, insufficient to meet Plaintiffs' "burden of showing that

13

their claims are similarly situated" with those of employees at all FQSR KFC locations in Maryland. *Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 605 (D. Md. 2020); *see, e.g., Andrade*, 2009 WL 2757099, at *5; *Camper*, 200 F.R.D. at 520–21.

In summary, the Court will grant Plaintiffs' Motion as to all individuals who have worked at one of FQSR's KFC or Taco Bell restaurant franchises located in the Chalkley Area (the Prince Frederick, Kettering, Upper Marlboro, La Plata, Waldorf, and Bryans Road locations) within the last three years and were classified as non-exempt from the overtime pay mandates, except those who worked only as either "Co-Managers" or "Shift Managers" during the entire period. Other cases in this District have likewise resulted in certification of a collective action under similar circumstances. *See, e.g., Mendoza*, 2016 WL 3440007, at *14; *Andrade*, 2009 WL 2757099, at *5 & n.13 (certifying a collective action across two offices that were under one director's purview). The Court will deny without prejudice the Motion as to the remaining FQSR KFC restaurants in Maryland.

### III. Notice

Having conditionally certified the collective action, the Court will authorize the provision of notice to members of the putative class as defined above. FQSR, however, further argues that notice may not be sent to employees who have entered into binding arbitration agreements to resolve any employment disputes. The Fourth Circuit has not addressed whether, at this conditional certification stage, courts must determine whether named plaintiffs or potential class members have valid arbitration agreements that may impact their ability to participate in a collective action. Nevertheless, FQSR relies on two recent out-of-circuit cases which concluded that a court may not authorize notice to individuals who have been shown to have entered into valid arbitration agreements and must give the defendant the opportunity to make that showing.

14

*See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502–03 (5th Cir. 2019) (holding that "[w]here a preponderance of the evidence shows that the employee has entered into a valid arbitration agreement," a district court may not order notice to be sent to that employee as part of any sort of certification" because "alerting those who cannot ultimately participate in the collective merely stirs up litigation"). In *Bigger*, the court adopted this requirement on the grounds that efficiency neither favors nor disfavors such a requirement, but that any benefit of efficiency is overridden by the need for the court to "maintain neutrality and to shield against abuse of the collective-action device." *Bigger*, 947 F.3d at 1050.

By contrast, numerous other courts, when presented with this issue, have concluded that evaluating the enforceability of an arbitration agreement is premature and "irrelevant" at the conditional certification stage, as such evaluation is a "merits-based determination better dealt with at the decertification stage." *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 206 (D.D.C. 2018) (collecting cases); *see also Camara v. Mastro's Restaurants LLC*, 340 F. Supp. 3d 46, 59 (D.D.C. 2018) (holding that based on "the decisions of the majority of courts" that have addressed this issue, "[a]t least in the circumstances . . . in which the named Plaintiff has not signed an arbitration agreement . . . the Court will not prematurely limit the dissemination of notice"); *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) (holding that "courts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination") (internal citations omitted).

The Court agrees with the reasoning in cases such as *Meyer* that the existence and enforceability of an arbitration agreement is a merits-based determination ordinarily not addressed at the conditional certification stage. *See Thiessen*, 267 F.3d at 1102 (requiring at the conditional certification stage "nothing more than substantial allegations" that the putative class members were

victims of a single decision, policy, or plan). The Court also has reservations about the reasoning of *Bigger* and *In re JPMorganChase*. Although *Bigger* correctly focused on the "twin goals" of collective actions of "efficiency" and "enforcement," it concluded that efficiency did not particularly favor resolving arbitration first or deferring on the question until after conditional certification. *Bigger*, 947 F.3d at 1049. This Court concludes, however, that efficiency disfavors delaying certification and notice until after the resolution of whether there are binding arbitration agreements, because it would be highly inefficient to adjudicate the validity of one plaintiff's purported arbitration agreement, only to receive, after the issuance of notice, additional claims of the existence of valid arbitration agreements relating to various opt-in plaintiffs. Here, for example, rather than assess the validity of two opt-in plaintiffs' arbitration agreements now, and then conduct a similar analysis for an unknown number of other plaintiffs in the future, it would be more efficient to consider and decide those questions together, after the issuance of notice. Indeed, the *Bigger* court recognized that "[a]s a general matter, it may be efficient to first send notice to a group of people and then weed out those who opt in but are in fact ineligible to join." *Bigger*, 947 F.3d at 1050.

As for enforcement of the FLSA, this goal, as well as efficiency, is undermined by any rigid requirement to resolve disputes about arbitration agreements before deciding the question of conditional certification and issuing notice, because the inevitable delay associated with adjudicating fact-based disputes about the validity of arbitration agreements has a substantive impact on claims. Specifically, because on FLSA claims the statute of limitations continues to run on potential class members' claims until they actually file a consent to opt into the collective action, *see* 29 U.S.C. § 256(b), the benefits of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make

16

informed decisions about whether to participate." *Hoffmann–La Roche*, 493 at 170. Yet if notice cannot be issued until the validity of all purported arbitration agreements have been fully adjudicated, putative class members claims may expire in whole or in part before notice is issued.

These considerations outweigh the concern that issuing notice to individuals who may have a valid arbitration agreement will exhibit a lack of neutrality by the court or constitute the solicitation of claims. *See Bigger*, 947 F.3d at 1050. In upholding court-supervised notice of a collective action, the Supreme Court concluded that "[c]ourt intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims." *Hoffmann–La Roche*, 493 U.S. at 174. Where the Supreme Court entrusted district courts to be "scrupulous to respect judicial neutrality" and to avoid "even the appearance of judicial endorsement of the merits of the action," the interest in maintaining neutrality is best addressed through the crafting of the language of the notice to ensure that no message of endorsement is conveyed. *Id.* Thus, where there is at least one named plaintiff who is unencumbered by an arbitration agreement, the Court finds no requirement to adjudicate whether certain putative class members have valid arbitration agreements before issuing notice. *See Camara*, 340 F. Supp. 3d at 59 (holding that where the named Plaintiff had not signed an arbitration agreement and "questions of fact remain about the existence and validity of other arbitration agreements, the Court will not prematurely limit the dissemination of notice"). The Court will therefore order that notice be issued.

The Court notes that even under the more restrictive approach of *Bigger*, notice may issue as to all putative class members other than Brown and Jennings. First, FQSR acknowledges that Lancaster and Proctor have not entered into arbitration agreements, so it is undisputed that there is at least one named plaintiff not subject to an arbitration agreement. Second, while FQSR offers

17

evidence of arbitration agreements accepted by Brown and Jennings, the validity of which remains in dispute, it has not identified any other specific potential class member who signed a valid arbitration agreement, nor has it provided any specific evidence establishing such a claim. Thus, even under *Bigger*, the Court may issue notice to Lancaster, Proctor, and all putative class members other than Brown and Jennings. *See Bigger*, 947 F.3d at 1050 (barring the issuance of notice to employees for whom the defendant has asserted and provided evidence to prove the validity and applicability of an arbitration agreement).

Accordingly, the Court will authorize notice to issue to all putative class members other than Brown and Jennings. Though it could do so, based on the unique circumstances of this case, the Court will not issue notice to Brown and Jennings for two reasons. First, where they have already opted into this case, the question whether they should receive notice is effectively moot, so there is no enforcement interest in such issuance. Second, where FQSR has previously sought leave to file a Motion to Compel Arbitration as to Brown and Jennings, even before the Motion for Conditional Certification was filed, and the Court, as a matter of judicial efficiency directed that FQSR's motion be deferred until after the Motion for Conditional Certification was addressed, the Court should fairly address the arbitration issue as to Brown and Jennings before proceeding further with their claims. The Court will therefore defer any necessary issuance of notice to Brown and Jennings until after resolution of the Motion to Compel Arbitration.

Finally, because Plaintiffs have not submitted proposed notice provisions, the Court will require the parties to meet and confer and submit a comprehensive, joint proposal regarding notice within 14 days.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Class Certification will be GRANTED IN PART and DENIED IN PART. The Motion will be granted in that the Court will conditionally certify a collective action consisting of all individuals who have worked within the last three years at one of FQSR's Kentucky Fried Chicken or Taco Bell restaurant franchises located in the area of Maryland overseen by Tom Chalkley, consisting of the restaurants in Prince Frederick, Kettering, Upper Marlboro, La Plata, Waldorf, and Bryans Road, Maryland, and were classified as non-exempt from the overtime pay mandates, except those who worked only as either "Co-Managers" or "Shift Managers" during the entire period. Notice shall issue to all putative class members other than Brown and Jennings. The Motion will be denied without prejudice as to the remaining FQSR restaurants in Maryland. A separate Order shall issue.

Date: September 11, 2020

THEODORE D. CHUANG
United States District Judge